## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOSE DANIEL CONTRERAS-
CERVANTES, *et al*.,

                Petitioners,            Case No. 2:25-cv-13073

v.                                      Hon. Brandy R. McMillion
                                      United States District Judge

KEVIN RAYCRAFT, *et al*,

                Respondents.

_____/

## OPINION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS (ECF NO. 1)

Petitioners Jose Daniel Contreras-Cervantes ("Contreras-Cervantes"), Fredy De Los Angeles-Flores ("Angeles-Flores"), Mariela Virginia Ocando-Leon ("Ocando-Leon"), Luis Felipe Jarquin-Jarquin ("Jarquin-Jarquin"), Debbie Vasquez-Cruz ("Vasquez-Cruz"), Jairo Manuel Godoy-Perez ("Godoy-Perez"), Marifer Diaz-Alcantar ("Diaz-Alcantar"), and Miguel Angel Reyes-Sanchez ("Reyes-Sanchez") (collectively, "Petitioners") have filed a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, alleging they are being unlawfully detained at either North Lake Processing Center, Monroe County Jail, or the Corrections Center of Northwest Ohio in violation of the Immigration and Nationality Act ("INA"). *See generally* ECF No. 1.

Each petitioner is a citizen of either Mexico, Venezuela, Nicaragua or Guatemala, with pending immigration proceedings for removal from the United States. *Id.* Despite having been found residing within the country for years and not engaging in criminal activity, apart from some having minor traffic violations, Respondents[1] are holding each Petitioner in custody, refusing to provide a bond determination. For the reasons stated below, this Petition for Writ of Habeas Corpus is **GRANTED**.

## I.

Contreras-Cervantes is a citizen of Mexico, who has been a United States resident since at least 2006. ECF No. 1, PageID.6; ECF No. 9-2, PageID.156. He lived in Romeo, Michigan with his wife and three children, ranging from ages one to nine—all of whom are United States citizens. ECF No. 1, PageID.10. Contreras-Cervantes has been diagnosed and is actively being treated for Chronic Myeloid Leukemia. *Id.* Contreras-Cervantes has no criminal history. ECF No. 6, PageID.118. On August 5, 2025, United States Border Patrol ("USBP") encountered

---

[1] Petitioner files this action against Kevin Raycraft ("Raycraft"), Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and the Executive Office for Immigration Review ("EOIR"). In response to this Petition, the Government contends that Petitioner's claim should only be brought against Raycraft, ECF No. 5, PageID.53, and Petitioner does not oppose, ECF No. 6, PageID.105. Thus, the Court will dismiss the Petition against all Respondents except for Raycraft (hereinafter referred to as "Respondent" or the "Government").

Contreras-Cervantes after the Macomb County Sheriff's Office made a traffic stop and arrested him.

Angeles-Flores is a citizen of Mexico, who has been a United States resident since at least 2010. ECF No. 1, PageID.6; ECF No. 9-3, PageID.161. USBP first encountered him near Laredo, Texas on March 11, 2010. ECF No. 9-3, PageID.161. He was allowed to voluntarily return to Mexico the same day. *Id.* He now lives in Pontiac, Michigan with his thirteenth-year old son who is a United States citizen. ECF No. 1, PageID.14. On June 27, 2025, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO") encountered Angeles-Flores while at a gas station in Pontiac. Angeles-Flores has no criminal history, aside from minor traffic infractions. *Id.* at PageID.16.

Ocando-Leon is a citizen of Venezuela, who has been a United States resident since at least 2021. ECF No. 1, PageID.17; ECF No. 9-4, PageID.166. She lives in White Lake, Michigan. ECF No. 1, PageID.17. USBP first encountered her near Laredo, Texas on November 11, 2021. ECF No. 9-4, PageID.166. During the initial encounter, Ocando-Leon was issued a Form I-862, Notice to Appear, and removal proceeding had commenced. *See id.* at PageID.166-167. However, because Ocando-Leon was the beneficiary of Temporary Protection Status, the Immigration Judge dismissed her proceedings without prejudice on January 14, 2025. *See id.* at PageID.167. On July 15, 2025, USBP encountered Ocando-Leon after the Auburn

Hills Police Department made a traffic stop and arrested her.  *Id.*  On October 1, 2025, Ocando-Leon was released from custody because of her temporary protection status, however she was redetained after ICE directed her to report for a check-in. *See* ECF No. 13, PageID.231.  Ocando-Leon has no criminal history, aside from minor traffic infractions.  ECF No. 1, PageID.18.

Jarquin-Jarquin is a citizen of Nicaragua, who has been a United States resident since at least 2022.  ECF No. 1, PageID.7; ECF No. 9-5, PageID.171.  He lives in Ypsilanti, Michigan.  *See* ECF No. 1, PageID.18.  USBP first encountered and detained him near Eagle Pass, Texas on May 21, 2022.  ECF No. 9-5, PageID.171.  On November 2, 2022, ICE ERO issued a Form I-862, Notice to Appear, charging him with inadmissibility under Section 212 (a)(6)(A)(i) of the INA.  *Id.*  Jarquin-Jarquin proceeded to file a Form I-589, Application for asylum and withholding removal, with the Detroit Immigration Court in May 2023.  *See id.* at PageID.172.  On August 6, 2025, ICE ERO encountered and arrested Jarquin-Jarquin because he matched a description of someone they were looking for.  See ECF No. 1, PageID.18-19.  Jarquin-Jarquin had a valid driver's license, vehicle registration, work authorization, and has no criminal history.  *See id.* at PageID.19-20.

Vasquez-Cruz is a citizen of Mexico, who has been a United States resident since at least 2016.  ECF No. 1, PageID.20; ECF No. 9-6, PageID.176.  She lives in

Detroit with her six-year-old daughter, who is a United States citizen.  ECF No. 1, PageID.20.  On August 1, 2025, USBP encountered Vasquez-Cruz in Port Huron, Michigan and served her with a Form I-200, Warrant for Arrest, and Form I-862, Notice to Appear.  On August 28, she requested, but later withdrew her request for, a bond hearing.  *See* ECF No. 9-6, PageID.177.  Vasquez-Cruz has no criminal history.  ECF No. 1, PageID.22.

Godoy-Perez is a citizen of Guatemala, who has been a United States resident since at least 2018.  ECF No. 1, PageID.6; ECF No. 9-7, PageID.181.  He lives in Milford, Michigan, a victim of a felonious assault, and is currently participating in the Oakland County Prosecutor's Office Crimes Victims Program.  ECF No. 1, PageID.22.  On July 31, 2025, ICE officers encountered Godoy-Perez while driving in Wixom, Michigan.  *See id.*  Godoy-Perez has no criminal history.  *See id.* at PageID.23.

Diaz-Alcantar is a citizen of Mexico, who has been a United States resident since at least 2003.  ECF No. 1, PageID.24; ECF No. 9-8, PageID.186.  She lives in Detroit.  ECF No. 1, PageID.24.  She has a pending DACA application before USCIS.  *See* ECF No. 9-8, PageID.186.  On July 30, 2025, USBP encountered Diaz-Alcantar after Clay Township Polic department made a routine traffic stop and took her into custody.  ECF No. 1, PageID.24.  She was then transported to the

Corrections Center of Northwest, Ohio and has remained there since. *See id.* Diaz-Alcantar has no criminal history. *See id.* at PageID.25.

Reyes-Sanchez is a citizen of Mexico, who has been a United States resident since at least 2000. ECF No. 1, PageID.9; ECF No. 9-9, PageID.190. He lives in Detroit with his wife and two children, ranging from ages 10 months to four—all of whom are United States citizens. ECF No. 1, PageID.10. USBP first encountered him on June 13, 2017, but he was released on an order of recognizance. ECF No. 9-9, PageID.190-191. In December 2017, he appeared before an Immigration Judge in Detroit, admitted to the factual allegations contained in the NTA, and concerned to removability. *See id.* at PageID.191. In 2018, Reyes-Sanchez filed a Form I-589 Application for Asylum and Withholding of Removal and Form EOIR 42-B, Application for Cancellation of Removal and Adjustment of Status for Certain Nonpermanent Residents. *See id.* On September 5, 2025, ICE ERO officers arrested Reyes-Sanchez. *Id.* He also has no criminal history other than minor traffic violations. ECF No. 1, PageID.27.

The petition alleges a similar factual situation for each petitioner. First, while out in public, customs and border patrol encountered and arrested the Petitioners after each person was either pulled over during a routine traffic stop for a minor violation, *see* ECF No. 1, PageID.11, 17, 24, while driving a company vehicle, *see id.* at PageID.18, in route to the beach after mistakenly taking a wrong turn towards

the border, *see id.* at PageID.20-21, heading to work, *see id.* at PageID.26, while stopping at a gas station, *see id.* at PageID.15, or just simply driving, *see id.* at PageID.22. Each non-citizen was then placed in custody placed into removal proceedings pursuant to § 1229a. *See* ECF No. 1, PageID.12, 15, 17, 19, 21, 23-24. Each petitioner was served with a Form I-200 (warrant for arrest of alien) and Form I-862 (Notice to Appear) and charged with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without inspection. *See id.* at PageID.12, 15, 17, 19, 21, 23-24, 26. Some of the Petitioners were also charged for lack of documentation, pursuant to § 1182(a)(7)(A)(i)(I). *See id.* at PageID.12, 17, 19, 21, 23, 25. Some Petitioners were moved around, *see, e.g.*, ECF No. 9-4, PageID.167, while others stayed in ICE custody within Michigan, *see, e.g.*, ECF No. 1, PageID.22.

When the Petitioners made requests for bond determinations before an Immigration Judge, the IJ denied each of their requests because of a "lack of jurisdiction to conduct a bond hearing" based on mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *See* ECF No. 1, PageID.13, 15, 17, 19, 21, 23, 25-26. No one, therefore, made any individual factual findings or in any way suggested that any of the Petitioners were at risk of flight or danger to the community, to warrant continued detention. *See id.*

On September 29, 2025, Petitioners collectively filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241. ECF No. 1.[2] The petition alleges violations of the INA and the Fifth Amendment Due Process Clause. *See id.* at PageID.16-17. Petitioners argue that as non-citizens residing in the United States, charged as inadmissible for having initially entered the country without inspection, 8 U.S.C. § 1226(a) allows for their release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate their risk of flight and dangerousness. *See generally* ECF Nos. 1, 6. The Government asserts that under 8 U.S.C. § 1225(b)(2)(A), Petitioners are properly detained because they fall in a category of noncitizens, whom the statute mandates should be detained pending removal proceedings. *See generally* ECF No. 5. Petitioners now seek immediate release from custody or, in the alternative, a bond hearing and attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412. ECF No. 1, PageID.41.

The Petition is now fully briefed. *See* ECF Nos. 9, 13. The Court has reviewed the filings and finds that the issues have been adequately briefed; therefore, a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f)(2). The Court will rule on the record before it. *Id.*

---

[2] This matter was originally assigned to the Honorable Laurie J. Michelson and reassigned to the undersigned as a companion to *Lopez-Campos v. Raycraft*, Case No. 25-cv-12987-BRM-EAS. The Court previously considered nearly identical factual issues and the same legal issues in *Lopez-Campos*.

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioners seek habeas relief arguing they are being unlawfully detained in violation of the INA, because "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to people who have already entered and were residing in the United States (perhaps, like some Petitioners, for decades) at the time they were apprehended by immigration authorities and detained. Because § 1226(a), not § 1225(b), is the applicable statute, Petitioner's detention without eligibility for bond is unlawful." ECF No. 1, PageID.36-37.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first – Section 1225 – is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "the word 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already." *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025)). And here, the title of the statute is instructive and "especially valuable [where] it reinforces what the text's nouns and verbs independently

suggest." *Barrera*, 2025 WL 2690565 at *4 (citing *Yates v. United States*, 574 U.S. 528, 552 (Alito, J., concurring in judgment)).

This section is a mandatory detention provision that states, in relevant part:

> **(2)** **INSPECTION OF OTHER ALIENS**
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). All applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for" standard removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226, titled: "Apprehension and detention of aliens" – provides for a discretionary detention framework, and states, in relevant part:

**(a)** **ARREST, DETENTION, AND RELEASE**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)  may continue to detain the arrested alien; and

(2)  may release the alien on—

(A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain noncitizens

who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence

in the country without being admitted (like Petitioners) from being released on bond,

*but only if* the noncitizen has also been:

charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[3].  Relevant here, noncitizens arrested and detained under

Section 1226 have a right to request a custody redetermination (*i.e.*, a bond hearing)

before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

---

[3] This section that subjects certain noncitizens to mandatory detention was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

## III.

## A.   ADMINISTRATIVE EXHAUSTION

Before determining the merits of this petition, the Court will first address Respondents' argument that it should require Petitioners to exhaust their administrative remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the Board of Immigration Appeals), before any of the Petitioners are permitted to proceed with their habeas petition.  *See* ECF No. 6, PageID.116-119.  This Court finds that unnecessary.

"Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991).  But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court.  *Id.; see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Exhaustion requirements not written into the text of the statute are prudential.  *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994).  "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not."  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

In determining when to require prudential exhaustion, courts apply the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)), which weighs whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015).  Here, all three factors weigh against requiring exhaustion.  First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record.  Second, because Diaz Sandoval's habeas petition includes a due process claim, the administrative scheme (*i.e.*, appeal to the BIA) is likely futile.  And third, administrative review is not likely to change Respondent's position that Section 1225(b)(2)(A) applies in this context.

Further, while the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks.  *See McCarthy*, 503 U.S. at 145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).  Exhaustion is also excused when delay means hardship. *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

In any case, as this Court has previously found, "[b]ond appeals before the BIA, on average, take six months to complete." *See Lopez-Campos v. Raycraft*, --- F.Supp.3d ----, No. 2:25-cv-12486, 2025 WL 2496379, at *5 (E.D. Mich. Aug.29, 2025) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)). Requiring Petitioners to wait six months to reach a decision on whether they are entitled to a bond hearing would be futile. Each Petitioner has a Merits or Asylum Protection Hearing set for less than six months from now. *See* ECF No. 9-2, PageID.158; ECF No. 9-3, PageID.163; ECF No. 9-5, PageID.173; ECF No. 9-6, PageID.178; ECF No. 9-7, PageID.183; ECF No. 9-8, PageID.187; ECF No. 9-9, PageID.192. As such, exhaustion would not effectively afford any of the Petitioners relief, given that a removal determination is very likely to come before the BIA's determination of whether they are entitled to a bond hearing. Therefore, its unmistakable that waiver is appropriate because depriving Petitioners of their liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm the Petitioners are trying to avoid by seeking the bond hearing – detention.

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006)

("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Petitioners are alleging a due process claim, an appeal to the BIA would be pointless.  Furthermore, this Court and many others have waived exhaustion in similar proceedings.  *See e.g. Shweika*, 2015 WL 6541689 at *13; *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025).  And as this Court has previously held, "[w]hen the liberty of a person is at stake, every day that passes is a critical one, and the Court cannot fault [Petitioners] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 2025 WL 2496379 at *5.  The same holds true for the Petitioners.

Hence, because exhaustion would be futile and unable to provide the Petitioners with the relief they request in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

## B.   STATUTORY INTERPRETATION

The central question to this habeas petition is which detention framework properly applies to non-citizens, who have lived in the United States for years, were never lawfully admitted to the country, who have recently encountered ICE ERO Officers, and are now facing removal proceedings.   Government says Section 1225(b)(2)(A), Petitioners, on the other hand, says Section 1226(a).

For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context.   But now that the Government's immigration policy has changed and Section 1225(b)(2)(A) is more favorable, they want the Court to declare that the historical application of Section 1226(a) is incorrect.   Respondent simply cannot have it both ways.   The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

In harmonizing Sections 1225 and 1226 of the INA, the Court must interpret the meaning of the statutes that apply at the time of inspection by immigration officials and at the time of apprehension.   "A statute should be construed so that effect is given to all its provisions[.]"   *Corley v. United States*, 556 U.S. 303, 314 (2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written.").   Each word within

the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  *Kentucky*, 23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)).  "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012).  Courts must also "use every tool at their disposal to determine the best reading of the statute."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).  In doing so here, the Court must determine whether the Petitioners are lawfully detained under Section 1225(b)(2)(A), as Respondent claims.  And the Court find they are not.

In looking to the plain text of the statutes, Section 1225(b)(2)(A) and Section 1226(a) do not support Respondent's contention that mandatory detention applies to "noncitizens [like Petitioners] who have already entered the United States unlawfully" as opposed to those "in the process of initially arriving."  ECF No. 9, PageID.136.  Section 1225(b) applies to "Inspection for applicants for admission," and subsection (1) governs "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."  Section 1226, on the other hand, applies to the "[a]pprehension and detention of aliens."  "While not binding, they are instructive and provide the Court with the necessary assurance that

it is at least applying the right part of the statute in a given circumstance." *Lopez-Campos*, 2025 WL 2496379 at *6 (citing *Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023)).  Here, it is as simple as looking to which statute makes the most sense – were Petitioners arriving and being inspected, or were they apprehended and detained.  The facts could not be clearer that it was the latter for each Petitioner.

Looking to Section 1225(b)(2)(A), when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  Respondent argues that the term "applicant for admission" is defined as any "noncitizen present in the United States who has not been admitted," and therefore it applies to anyone here unlawfully, even if they are already physically present—regardless of the length of time they have been present.  *See* ECF No. 9, PageID.136 (citing 8 U.S.C. § 1225(a)(1)).  The Government similarly argues that "seeking admission" is described as only referencing "lawful entry. . . .without regard to where or when that right may be granted" and does not refer to a noncitizen "physically crossing the border into the country."  *Id.* at PageID.136-137 (citing 8 U.S.C. § 1101(a)(13)(A)).  So, under Respondent's interpretation, Section

1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted.  The Court finds this much too broad.

The Court finds that 1225(b)(2)(A) applies when people are being inspected, which usually occurs at the border, when they are seeking lawful entry into this country.  Each Petitioner was either driving or riding in a vehicle within the United States, several years after arriving.  There is no logical interpretation that would find that Petitioners were actively "seeking admission" after having resided here, albeit unlawfully, for years.

In contrast, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  This provision is clearly applicable, as each Petitioner was apprehended during a traffic stop, arrested and detained.  *See* ECF No. 1, PageID.11, PageID.15, PageID.17, PageID.18, PageID.20-21, PageID.22, PageID.24, PageID.26.  All of them have pending removal proceedings in the Immigration Court, therefore the Attorney General, "may continue to detain" and "may release on bond."  While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (*i.e.*, bond hearing) before an IJ – which is precisely what most of the Petitioners have done.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

The Supreme Court has looked at these statutes and clarified that they apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (citing *Jennings*, 583 U.S. at 287). Whereas Section 1226(a) applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal. *Jennings*, 538 at 288. Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country." *Id*.

Looking to the facts of this case, it is undisputed that the Petitioners, by definition, are noncitizens "present in the United States who has not been admitted or paroled." 8 U.S.C. § 1182(a)(6)(A). Respondents don't know when the Petitioners arrived in the United States, but they have been here for years. *See supra* Section I. In fact, the Petitioners were apprehended during traffic stops at various locations in Michigan after having resided in this country. *See* ECF No. 9-3, PageID.162; ECF No. 9-4, PageID.167; ECF No. 9-5, PageID.172; ECF No. 9-6, PageID.176; ECF No. 9-7, PageID.181; ECF No. 9-8, PageID.187; ECF No. 9-9, PageID.191. Under these circumstances, it cannot be said that Section

1225(b)(2)(A) applies to them.   None of the Petitioners were "arriving to the country" or found at the border or a port of entry.   Quite the contrary, they were apprehended "already in the country," after living and being present in the United States for a substantial period of time, making Section 1226 applicable.   *See Jennings*, 538 at 288.

Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.   The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Diaz Sandoval), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes.   *See* 8 U.S.C. § 1226(c)(1)(E).   Respondent's interpretation of the statutes would render this recently amended section superfluous.   As another court recently held,

> [W]hile Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* ..., the Attorney General ... *may*" (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like [Diaz Sandoval], who are subject to

> Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B. GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

*dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025). "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless" and this Court, too, "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Maldonado v. Olsen*, ---F. Supp.3d----, No. 0:25-cv-03142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).[4] Therefore, the Court finds that none of the Petitioners are subject

---

[4] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-

to the provisions of Section 1225(b)(2)(A).  Rather, they each clearly fall under the

provision of Section 1226(a), and are therefore subject to the discretionary bond

determination outline therein. [5]

---

12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Maldonado v. Olson*, ---F.Supp.3d ----, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Romero v. Hyde, et al., ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ----, No. 0:25-cv-03051, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Doe v. Moniz*, --- F.Supp.3d ----, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lamidi v. FCI Berlin, Warden*, No. 1:25-cv-00297-LM-TSM (D.N.H. Sept. 15, 2025); *Garcia Cortes, v. Noem et al.*, No. 25-cv-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Maldonado Vazquez v. Feeley et al.*, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos et al.*, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, ---F.Supp.3d ----, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chogllo Chafla v. Scott et al.*, No. 2:25-cv-00437-SDN, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, No. 1:25-cv-01163-KES-SKO, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, ---F. Supp. 3d ----, No. 25-CV-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Barrajas v. Noem et al.*, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Valencia Zapata v. Kaiser*, ---F. Supp. 3d ----, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Quispe v. Crawford, et al.*, No. 1:25-cv-1471-AJT-LRV, 2025 WL2783799 (E.D. Va. Sept. 29, 2025); *Belsai D.S. v. Bondi, et al.*, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Echevarria v. Bondi, et al.*, No. cv-25-03252-PHX-DWL, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, ---F. Supp. 3d ----, No. 25-cv-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Hyppolite v. Noem, et al.*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

[5] The Court notes that Count II of the Petition asserts that the Government is in violation of regulations that would require a bond.  The Government argues that those regulations don't apply because Petitioners are being held under 1225(b)(2); however as the Court has discussed, 1225(b)(2) is inapplicable in this case as 1226 is the proper statute, and those regulations apply under 1226.

## C.   DUE PROCESS

Finally, the Court must address whether the Petitioners' continued detention is a violation of due process – and the Court finds that it is.

At the heart of the Fifth Amendment is the right to be free from deprivation of life, liberty or property without due process of law.   U.S. CONST. amend. V. Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The Due Process Clause extends to all "persons" regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently).  *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18, 2023).

This Court determines the adequacy of due process in the context of civil immigration confinement through evaluating: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).  Here, all three factors weigh in favor of affording the Petitioners

with a detention hearing.  The Petitioners' liberty is at stake.  The risk of erroneously depriving them of freedom is high if the Immigration Judge fails to assess their individual risk of flight and dangerousness.  And, on the record currently before the Court, given the history and characteristics of these Petitioners, the Government has not and likely cannot show that it has a significant interest in any of the Petitioners' continued detention.

Respondents do not dispute that the Petitioners are entitled to due process, rather it argues that the process due under Section 1225(b)(2)(A) was already afforded to them in various ways.  *See* ECF No. 9, PageID.133.  The Government asserts that "petitioners' only plausible challenge to their detention is that they are detained under the wrong statute, which even if true, would make their detention unlawful, but it would not make it unconstitutional."  *See id.*  The Court strongly disagrees; life and liberty are stake.

As this Court has previously held, Section 1226(a) governs detention circumstances, like the Petitioners, *see Lopez-Campos*, 2025 WL 2496379 at *9, therefore the process due to them is that which is afforded under Section 1226(a). The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct for any of the Petitioners before detaining them.  Therefore, without first evaluating each

Petitioner's risk of flight or dangerousness, their detention is a violation of rights

due process rights afforded to them under the INA.

## IV.

As this Court has previously stated:

> Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For centuries, the Government has acted in accordance with these principles. The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests.

*Lopez-Campos*, 2025 WL 2496379 at *10. The plain language of both Sections

1226(a) and 1225(b)(2)(A) mandate a finding that the Petitioners are entitled to a

detention hearing pending their removal proceedings. Because the Immigration

Court is in the best position to evaluate Petitioners' risk of non-appearance and

dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, the Petition for Writ of Habeas Corpus (ECF No. 1) is

**GRANTED**. Respondents are **HEREBY ORDERED** to immediately release the

Petitioners, or in the alternative, provide them with a bond hearing under 8 U.S.C. §

1226(a) within seven (7) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondents are **ENJOINED** from

pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents shall file a Status Report with this Court on or before October 27, 2025, to certify compliance with this Order. The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  October 17, 2025                    s/Brandy R. McMillion
      Detroit, Michigan                    HON. BRANDY R. MCMILLION
                                   United States District Judge